UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:

| | |
|---|---|
| GREGG WADE AND KARIN WADE ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| TOUCHDOWN REALTY GROUP, LLC ) | |
| and TOM CLAYTON ) | |
| ) | |
| ) | |
| Defendants ) | |

INTRODUCTION

This is a lawsuit brought by a Gregg and Karin Wade, husband and wife, who purchased a home in Foxboro in the Commonwealth of Massachusetts from Touchdown Realty Group, LLC of the state of Rhode Island. Touchdown Realty Group, LLC and Tom Clayton made material misrepresentations of fact about the real estate being conveyed, and did defraud the Wades. The Wades seek rescission of the real estate contract, plus incidental and consequential damages and legal fees, as well as treble damages under G.L. c. 93A.

THE PARTIES

1. Plaintiffs, Gregg and Karin Wade ("the Plaintiffs" or "the Wades") are individuals with a place of residence at 32 Oak Street in Foxboro in the Commonwealth of Massachusetts.

2. Defendant, Touchdown Realty Group, LLC is a Rhode Island Limited Liability Corporation with a place of business at 12 E. Cottage Street in Smithfield in the state of Rhode Island.

3. Defendant, Tom Clayton, although not listed as a manger or officer of Touchdown Realty Group, LLC is the real party in interest of Touchdown Realty Group, LLC. The name "Touchdown Realty" relates to Tom Clayton's short-lived professional football career with the New England Patriots. Tom Clayton is also a Vice President of Better Living Real Estate, in which capacity he made materially false statements to the Plaintiffs and their broker in an individual capacity and not in the name of Touchdown Realty Group, LLC.

THE "PROPERTY" DEFINED

4. This lawsuit involves single family home at 32 Oak Street in Foxboro, which the Defendants "flipped" to the Plaintiffs on August 31, 2016. In this case, the "Property" refers to this home.

JURISDICTION BY THIS COURT

5. Jurisdiction is established by complete diversity of the parties and the amount in controversy exceeds $75,000, meeting the monetary threshold requirements for exercise of jurisdiction under 28 U.S.C. § 1332.

6. Personal jurisdiction (as well as ancillary subject matter jurisdiction) is equally conferred over the Defendants based upon their conduct of conducting within the Commonwealth of Massachusetts, and purposeful availment within the Commonwealth of Massachusetts.

FACTUAL BACKGROUND

7. Prior to the facts alleged herein, Gregg and Karin Wade were residents of the state of Michigan. They are a married couple with two children. Their older child, a daughter, has cerebral palsy, and requires regular care and special accommodation in her living quarters.

8. Gregg Wade moved to the area on July 1, 2016 for a new job, with his family following in August of 2016.

9. The Wades and Touchdown Realty Group, LLC entered in to a contract for the purchase and sale of the Property. Touchdown Realty Group, LLC relied upon its connection to the Patriots organization in Foxboro to both lend a sense of credibility to it. The Purchase and Sale Agreement is appended hereto as Exhibit A.

10. After closing on August 31, 2016, the Wades took possession of the property and began modifying a downstairs bedroom and bathroom for the special needs of their daughter.

11. Almost immediately, they discovered and encountered electrical and plumbing problems with the house.

12. The electrical problems were noted on the first day in the home, with failed switches and outlets, and circuit breakers being activated. Clayton sent an electrician to effectuate

repairs. The electrician informed the Wades that the house would have burned down but for the repairs he had effectuated on problematic electric system.

13. Shortly after closing, as movers were on the property for the Wades, water began pouring from the finished basement ceiling due to a faulty shower drain on the first floor. Clayton sent a "handyman" to fix the plumbing problem and patch the ceiling.

14. Nonetheless, these were just the beginning of problems noted.

15.  In addition to plumbing deficiencies and serious electrical hazard, it was quickly discovered, as construction work proceeded,  that the house contained improper framing, improper insulation, lack of necessary fire stopping and an absence of requisite permits, notwithstanding that the Defendants had provided a Certificate of Occupancy at the closing on August 31, 2016.

16. Further investigation revealed a letter dated August 15, 2016 from the Inspections Department of the town of Foxboro, attached in Exhibit B, to Tom Clayton, in which it was disclosed that proper permits had not been pulled and that "a review of the file reveals that plumbing and electrical permits were required for the kitchen renovations but were never obtained therefore building code violation exists. I have made this fact known to the building owner, Mr. Clayton but as of yet no permits have been applied for, or acquired for the plumbing and electrical, and no inspections have been performed for compliance."

17. Investigation has revealed that the Defendants promptly applied for a permit, but misrepresented to the town of Foxboro what work had been performed. The same investigation reveals that the town of Foxboro then conducted inspection based upon the

representations, and issued a Certificate of Compliance for the closing on August 31, 2016.

18. The investigation suggests that the Defendant did not disclose the extent of plumbing and electrical work, framing and insulation work, deck construction and basic fire safety.

19. The misrepresentations to the town of Foxboro were consistent with misrepresentations made in the sale of the property in general. By way of example, the Defendants made false statements that certain upgrade work had been performed by a prior owner when, in fact, the subsequent opening of the walls revealed that much of the framing, drywall, wiring, insulation, plumbing and hot water installation all had been performed by the Defendants.

20. Many of the code violations discovered were intentional. By way of example, the visible plumbing was code compliant, whereas the plumbing buried in the walls and ceilings and not visible was not code compliant, which confirms an intent to conceal and deceive.

21. Of equal importance, it was discovered prior to closing that there was some question whether the house was a two bedroom house or a three bedroom house, a vital and important fact.

22. Exhibit C contains several emails. The first was a request to Tom Clayton to explain the confusion as to whether the house was a two or three bedroom home. The second email is from Tom Clayton personally, from Better Living Real Estate, explaining the discrepancy.

23. Nonetheless, subsequent investigation determined that this explanation, which was clearly given to induce the Wades to close on the transaction, was not accurate or correct

or complete. Oddly, Tom Clayton admits in this email an obligation to disclose what he knows, even as he failed to do so.

24. The Property requires substantial rework to make it code compliant, adding nearly $100,000 or more to the cost of a house which, under the Purchase and Sale Agreement, was required to be code compliant, but which was not.

25. Even if the house was made code compliant, the house cannot be used as a three-bedroom house, as Clayton represented.

26. Counsel for the Defendants, who represented Touchdown Realty Group, LLC at the closing, came to the house for an inspection after the discovery of the defects in the property. Defendants' counsel was given a tour of the defects by the Wades' contractor. Shortly after this inspection, the attorney for the Defendants informed the Wades that he would not be representing the Defendants in this case.

27. On February 1, 2017, the Wades sent a demand letter under G.L. c. 93A to the Defendants. The letter was sent to Clayton at the address provided by him to the town of Foxboro, and to Touchdown Realty Group, LLC at the address identified by the Secretary of State in the state of Rhode Island.

28. Clayton and Touchdown Realty Group, LLC refused to sign for the letters sent to them. The package is attached as Exhibit B. The content of the letters, together with the documents and photographs, provide greater depth to the facts alleged herein, and should be construed as being incorporated to the four corners of this Complaint as if specifically restated herein.

29. By refusing to sign for letters seeking relief under c. 93A, the Defendants have compounded the bad faith and unfair and deceptive trade practices expressed therein.

30. The house, as delivered by Tom Clayton and Touchdown Realty Group, Inc. was a deathtrap, in which faulty electrical wiring posed imminent risk of ignition, in a house which also lacked firestops and which contained voids which would have resulted in fire spreading through the house with rapidity.

31. The Defendants, by putting at risk parents who would need to evacuate two young children, one with severe physical disability, from this serious and dangerous structure fire trap, represents a callous indifference to human life and basic decency, all in the name of profit, and all made possible by trading on his affiliation with the Patriots organization in its home town of Foxboro.

## COUNT I
## BREACH OF CONTRACT

32. The Plaintiffs restate allegations 1-31 and incorporates them herein by reference.

33. The Defendants promised in the Purchase and Sale Agreement to deliver a house which was code compliant in the Commonwealth of Massachusetts, as evidenced by a Certificate of Occupancy to be tendered at closing.

34. The Defendants did not deliver on the promise of providing a Property which was code compliant, in large part by deceiving the officials of the town of Foxboro, as well as the Wades, as to the work performed and the condition of the structure.

35. The house is not, and cannot, be made easily compliant.

36. As a result of this breach, the Wades have been harmed, and have suffered the loss of their expectancy, together with incidental and consequential damages foreseeable at the time of execution of the contract.

## COUNT II
## BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

37. The Plaintiffs restate allegations 1-36 and incorporate them herein by reference.

38. The conduct of the Defendants violates the covenant of good faith and fair dealing inherent in all contracts in the Commonwealth of Massachusetts.

39. The breach of the covenants of good faith and fair dealing constitute a breach of contract.

40. As a result of this breach, the Plaintiff has been denied its expectancy and has otherwise been harmed.

## COUNT III
## FRAUD/INTENTIONAL MISREPRESENTATION/FRAUD IN THE INDUCEMENT

41. The Plaintiffs restate allegations 1-40 and incorporate them herein by reference.

42. The Defendants made at least five material misrepresentations in this transaction which were false and knowingly false, and which were designed to induce reliance and which did induce reliance, to the detriment of the Wades.

43. First, the Defendants made material misrepresentations of the condition of hidden portions of the Property, including the extent and scope of plumbing, electrical, insulation and framing of the Property by the Defendants.

44. Second, between August 16-31, 2016, the Defendants made material misrepresentations to the town of Foxboro inspectors about the scope of work performed in order to secure a certificate of occupancy.

45. Third, the Defendants concealed from the Wades that the closing needed to be postponed so that serious electrical rework could be done to satisfy the town's concerns; Clayton twice told the financing bank and the realtor that the delays were necessary for minor cosmetic changes. The Defendants thereby kept the Wades from knowing that substantial changes had been made post inspection, and thereby prevented the Wades from conducting a second home-inspection to approve or disprove changes made after their home inspection.

46. At the closing on August 31, 2016, the Certificate of Occupancy which was secured and procured through fraud was presented at closing of the Property as evidence of compliance when, in fact, the Defendants knew that the Certificate being tendered was fraudulent, and that the Wades were relying upon it.

47. On or about July 21, 2016, Tom Clayton, acting outside of Touchdown Realty Group, LLC made material misrepresentations of fact about the two/three bedroom discrepancy to the Wades, inducing reliance by the Wades to buy something which, had Clayton been truthful, would have resulted in termination of the deal.

## COUNT IV
## DECLARATORY JUDGMENT
## ALTER EGO

48. The Plaintiffs restate paragraphs 1-47 and incorporate them herein by reference.

49. Notwithstanding that Tom Clayton has no visible connection to Touchdown Property Group, LLC as a matter of public record, the email of July 21, 2016 makes clear that Tom Clayton is the beneficial owner of Touchdown Realty Group, LLC.

50. Statements such as "we did not redesign the system" make clear that Tom Clayton treats the LLC as his own, receiving the benefit of the sale while shielding himself from the actual corporate liability, which is a fraud.

51. Tom Clayton and Touchdown Property Group, LLC are alter egos of each other as the law defines this relationship in the Commonwealth of Massachusetts, thus warranting that this Court declare that the corporate veil does not shield Clayton from personal liability for the actions of Touchdown Realty Group, LLC. and that the corporate veil should be pierced in this instance.

## COUNT V
## VIOLATION OF G.L. c. 93A

52. The Plaintiffs restate paragraphs 1-51 and incorporate them herein by reference.

53. Touchdown Realty Group, LLC is involved in trade and commerce within the Commonwealth.

54. The acts complained of herein, of fraud and misrepresentation, and fraud in the inducement, demonstrate the unseemly bad faith and unfair and deceptive trade practices which the Commonwealth has sought to prescribe by enacting G.L. c. 93A.

55. Indeed, the acts described herein have the rancid flavor of unfairness which shock the conscience, even of someone inured to the rough and tumble world of commerce.

56. The Defendants in this case, in the name of profit, intentionally endangered the lives of a family.

57. The Defendants in this case have further compounded their unfair and deceptive trade practices by refusing to sign for the demand served upon them, an ostrich-like response

which further evidences indifference to the misconduct of these defendants for the harm they have caused.

58. No offer was made to rectify this situation.

59. As a result of the unfair and deceptive trade practices, the Plaintiffs have been harmed.

WHEREFORE, the Plaintiffs respectfully request that:

1. this Honorable Court enter judgment against the Defendants on all counts.

2. this Honorable Court declare that Touchdown Realty Group, Inc. willfully breached the contract of sale by tendered a false certificate of occupancy, and that the Court Order rescission of the transaction, as well as a refund of costs and damages incurred, closing fees and attorney's fees, as well as construction costs for temporary remediation of defects, costs of converting the home for disability access, moving expenses, bank charges and other incidental and consequential damages.

3. this Honorable Court find that the defendants did engage in fraud, fraud in the inducement and fraudulent misrepresentation, and that appropriate damages be awarded.

4. this Honorable Court find that Tom Clayton and Touchdown Realty Group, LLC are alter egos of each other, that the corporate veil be pierced, and that judgment enter against Tom Clayton personally for the remedy sought.

5. this Honorable Court find that the defendants acted unfairly and deceptively as defined under G.L. c. 93A, and that all damages be trebled, and attorney's fees awarded.

6. this Honorable Court award any further relief as deemed appropriate by this Court.

THE PLAINTIFFS DEMAND A TRIAL BY JURY

                    Respectfully Submitted,

                    **Gregg and Karin Wade**

                    By their attorney,

                    _/s/Robert N. Meltzer_
Robert N. Meltzer, BBO #564745
Mountain States Law Group
Wheelhouse at the Bradford Mill
33 Bradford Street
Concord, MA 01742
Phone: (978) 254 6289
robmeltzer@aol.com

Dated: March 7, 2017