UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGG WADE and ) | |
| KARIN WADE, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| v. ) | NO. 17-10400-PBS |
| ) | |
| TOUCHDOWN REALTY GROUP, ) | |
| LLC and TOM CLAYTON, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM OF DECISION AND ORDER
# ON PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

January 26, 2018

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on "Plaintiffs' Motion for a Protective Order Pursuant to F.R.C.P. 26(b)(5) and F.R.C.P. 26(c)(1)(A)." Docket No. 24. Therein, plaintiffs contend that documents in the possession of their witness, Dennis Schadler, are protected from discovery by either the attorney-client privilege or the work product doctrine. After careful consideration of the record and oral arguments of counsel, the motion is ALLOWED on the grounds that the material is protected by the work product doctrine.

## II. STATEMENT OF FACTS

The plaintiffs, Gregg and Karin Wade (the "Wades"), purchased a home in Foxboro, Massachusetts from the defendant, Touchdown Realty Group, LLC ("Touchdown"). The defendant, Tom Clayton ("Mr. Clayton"), is allegedly the "real party in interest" of Touchdown.

Am. Compl. (Docket No. 37) ¶ 3.  The plaintiffs allege that Touchdown and Mr. Clayton made material misrepresentations and otherwise defrauded them in connection with the sale.  In particular, but without limitation, the Wades contend that misrepresentations were made to them to the effect that the house could be used as a three-bedroom home, and that a downstairs room with an adjoining bathroom could be used by the Wades' disabled daughter as a bedroom.  They also contend that the house had serious construction defects which were not disclosed.

Before they learned of the alleged defects, the Wades had hired D & D Home Improvements, Inc., and its principal, Dennis Schadler ("Mr. Schadler"), to undertake a bathroom and bedroom renovation.  Schadler Depo. at 17.  They obtained his name through RCAP Solutions, a state-funded agency that assists homeowners in paying for renovations needed for persons with special needs.  Id.  During the course of his work at the Wades' home, Mr. Schadler determined that, in his opinion, construction work done by Touchdown prior to the sale was defective.  He was also of the opinion that the electrical and plumbing work, and the use of insulation and fire retardant materials, were not up to the then current Massachusetts State Building Code.

The Wades brought suit against Touchdown and Mr. Clayton based on Mr. Schadler's findings.[1]  Mr. Schadler remained in close contact with the Wades and advised them concerning the issues in dispute in the litigation.  Mrs. Wade served as a conduit of information between plaintiffs' counsel, Robert Meltzer, and Mr. Schadler.  Mr. Schadler was never retained by

---

[1] The defendants strongly dispute Mr. Schadler's findings and deny any liability.

Attorney Meltzer. In her affidavit in support of the motion for a protective order, Mrs. Wade described the relationship as follows:

> 4. Dennis Schadler has two roles. First, he is a contractor who has been working on repairing the defects in our house. These defects are the subject of this case. He is also serving as a code consultant for my husband and I with regards to the issues with the town of Foxboro. He will be testifying at trial not only about what he saw, but what the codes says about what he saw, and why it is important.
>
> 5. Dennis Schadler is part of our litigation team. Our lawyer represents construction companies, and he speaks the same language as Dennis Schadler, who is a contractor. When our lawyer has been asking us questions relating to framing issues for the litigation, which he has been doing in email, I had been sending those questions and comments directly to Dennis Schadler.
>
> 6. By doing that, I certainly wasn't "waiving" an attorney/client privilege. What I was doing was taking myself out as the middle person between two people who understood a language and a process that is new to me. I am from New Jersey and Michigan, and my primary occupation consists of caring for a disabled child. I do not understand Massachusetts building code or what it means. Thus, Dennis was translating for me what my lawyer was asking, and he was translating for my lawyer what I was saying and seeing.
>
> 7. All of the emails in question were written after I hired a lawyer for the purpose of sorting out what our legal rights were, and they reflect what our lawyer was thinking, not the facts of the case that existed before we hired a lawyer.

Karin Wade Aff. (Docket No. 24-2) ¶¶ 4-7.

The defendants took the deposition of Mr. Schadler as a fact witness and as the keeper of the records of D & D Home Improvements, Inc. Mr. Schadler arrived at the deposition with documents that had never been seen by plaintiffs' counsel. Counsel reviewed the documents and identified those for which the plaintiffs claimed a privilege. They were segregated and put in a sealed envelope. They have been provided to the court for an *in camera* review, and these are the documents that are at issue in this pending motion.

**Types of Documents Withheld from Production**

There are multiple copies of all of the emails in the group of withheld documents. Given the way the materials were produced, and withheld, no privilege log was made. Therefore, the court will describe the types of emails withheld in a fashion similar to that required in a privilege log, i.e., "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Thus, the documents can be broken down into the following categories:

1. An email chain between Attorney Meltzer and Mrs. Wade relating to an inspection report and contents of interrogatory answers. The chain was forwarded by Mrs. Wade to Mr. Schadler, with whom she communicated about the report. These emails were sent during the period July 2, 2017 through July 3, 2017.

2. An email dated March 28, 2017 from Attorney Meltzer to Mrs. Wade regarding litigation strategy.

3. Emails between Attorney Meltzer and Mrs. Wade, which she forwarded to Mr. Schadler, relating to the 93A demand letter and litigation strategy, and emails between Mr. Schadler and Mrs. Wade commenting on same. These were during the period January 30, 2017 through February 3, 2017.

4. Email from Lisa Paulette to Mrs. Wade dated February 1, 2017 forwarding correspondence relating to the septic system, and email from Mrs. Wade to Attorney Meltzer dated February 1, 2017, forwarding and commenting on same.[2]

---

[2] Included in these materials are emails between the defendant Tom Clayton and Lisa Paulette dated July 21, 2016, which the court assumes have been produced.

5. Emails between Mrs. Wade and Attorney Meltzer concerning events leading up to litigation. They were during the period January 6 - 26, 2017.

## II. ANALYSIS

### The Derivative Attorney-Client Privilege

"Generally, disclosing attorney-client communications to a third party undermines the privilege." Cavallaro v. United States, 284 F.3d 236, 246-47 (1st Cir. 2002), and authorities cited.[3] There is an exception to this rule, recognized by the Second Circuit in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961), "for third parties employed to assist a lawyer in rendering legal advice." Cavallaro, 284 F.3d at 247. This exception, which is also known as the "derivative attorney-client privilege," is relied on by the Wades to withhold the communications between Mrs. Wade and her attorney, and Mrs. Wade and Mr. Schadler. See Comm'r of Revenue v. Comcast Corp., 453 Mass. 293, 306, 901 N.E.2d 1185, 1196-97 (2009) ("Now known as the Kovel doctrine or the derivative attorney-client privilege[,]" "the privilege can shield communications of a third party employed to facilitate communication between the attorney and client and thereby assist the attorney in rendering legal advice to the client."), and cases cited. However, this exception "is sharply limited in scope." DaRosa v. City of New Bedford, 471 Mass. 446, 463, 30 N.E.3d 790, 804 (2015). For the reasons detailed herein, it has no application in the instant case.

---

[3] The defendants argue that Massachusetts state law of privilege applies to this diversity action. Defs. Opp. (Docket No. 26) at 6. However, both parties cite to federal and state cases, and there does not appear to be any significant difference with respect to the scope of the attorney-client privilege or work product doctrine as applicable to the issues in this dispute.

[5]

In order for the exception to apply, the third-party communication must be "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Cavallaro, 284 F.3d at 247-48 (quoting Kovel, 296 F.2d at 922). The "necessary" requirement is a high bar, and "means more than just useful and convenient. The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications. Mere convenience is not sufficient." Id. at 249 (quotation and citation omitted). Similarly, the exception "does not apply to instances where an attorney's ability to represent a client is merely improved by the assistance of the third party." Dahl v. Bain Capital Partners, LLC, 714 F. Supp. 2d 225, 227-28 (D. Mass. 2010), and cases cited. In addition, "the exception applies only to communications in which the third party plays an interpretive role. In other words, the third party's communication must serve to translate information between the client and the attorney." Id. at 228, and cases cited. Finally, "the third party's communication must be made for the purpose of rendering legal advice, rather than business advice." Id.

In the instant case, there is no evidence that Mr. Schadler was needed to help translate any communications between the Wades and their attorney, and he clearly was not hired for such a purpose. This is sufficient to defeat the claim of privilege. See Cavallaro, 284 F.3d at 247-48 (record does not show that anyone hired accountant for the purpose of assisting attorneys in providing legal advice, therefore communications between client and accountant were not privileged). Even more significantly, there is nothing in the emails cited above in which Mr. Schadler was called upon to provide interpretative services in connection with the

communications between the Wades and their counsel.  The derivative attorney/client privilege does not shield the production of these documents.

## Work Product Doctrine

The plaintiffs are also seeking to preclude the production of these documents on the basis of the work product doctrine.  After a careful review of the documents, this court concludes that the documents are protected by the work product doctrine.

The purpose of the work product doctrine is "to enhance the vitality of an adversary system of litigation by insulating counsel's work from intrusions, inferences, or borrowings by other parties." Comm'r of Revenue, 453 Mass. at 311, 901 N.E.2d at 1200 (quotation and citations omitted).  "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning to prevent one party from piggybacking on the adversary's preparation.  While the attorney-client privilege shields communications between attorney and client (and in some circumstances third parties), the work product doctrine protects an attorney's written materials and 'mental impressions.'" Id., 453 Mass. at 311-12, 901 N.E.2d at 1200 (internal punctuation, quotations and citations omitted).  Significantly, however, the doctrine is not limited to attorneys, but also applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3); Mass. R. Civ. P. 26(b)(3); see also Lobel v. Woodland Golf Club of Auburndale, No. 15-13803-FDS, 2016 WL 7410776, at *1 (D. Mass. Dec. 22, 2016) (work product doctrine extends "to documents and things prepared for litigation or trial by or for the adverse party itself or its agent." (quotation and citation omitted)).

"[T]he protection [for work product] is qualified, and can be overcome if the party seeking discovery demonstrates 'substantial need of the materials' and that it is 'unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" DaRosa, 471 Mass. at 458-59, 30 N.E.3d at 801 (internal quotations omitted). "Opinion work product, which is described in rule 26(b)(3) as 'the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation,' is afforded greater protection than 'fact' work product." Id. (internal quotations and citations omitted). Thus, "'a highly persuasive showing' is needed to justify the disclosure of opinion work product." Id. (internal quotation omitted).

Significantly, "[t]he waiver of the attorney-client privilege for a communication does not automatically waive whatever work-product immunity documents may also enjoy, as the two are independent and grounded on different policies. Waiver of the privilege should always be analyzed distinctly from waiver of work product, since the privilege is that of the client and the work product essentially protects the attorney's work and mental impressions from adversaries and third parties even when communicated to the client." 2 Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine at 1280 (6th ed. ABA 2017). Consequently, even if a communication is not protected by the derivative attorney-client privilege, it may nevertheless be protected by the work product doctrine. See Comm'r of Revenue, 453 Mass. at 311, 317-19, 901 N.E.2d at 1200, 1204-06. That is the situation here.

In the instant case, the documents relate to the soon-to-be initiated or ongoing litigation, and discuss facts relevant to the litigation in some cases, and litigation strategy in others. They were prepared "because of existing litigation" and, thus, qualify as work-product.

See Comm'r of Revenue, 453 Mass. at 316, 317, 901 N.E.2d at 1203, 1204 ("a document is within the scope of the rule if, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared *because of* the . . . litigation." (internal quotation omitted)).  To the extent that there was a disclosure of information to Mr. Schadler, it was to an individual aligned with the plaintiffs, and did not constitute a waiver of the protection afforded by the work product doctrine.  "The essential question with respect to waiver of the work-product doctrine by disclosure is whether the material has been kept away from adversaries.  Thus, the protection is retained when there has been disclosure to persons with a common interest, to persons in the course of a business relationship, and to the government.  In all cases, the focus of the inquiry is on the extent to which the relationship is an adversarial one and the efforts made to keep adversaries from obtaining the material."  2 Epstein, supra, at 1291.  Finally, the defendants have not established a substantial need for the documents.  The deposition of Mr. Schadler establishes that he answered the factual inquiries put to him about the condition of the property, his findings, and his qualifications to make these findings.  For these reasons, the documents are protected by the work product doctrine.

### III. CONCLUSION

For all the reasons detailed herein, "Plaintiffs' Motion for a Protective Order Pursuant to F.R.C.P. 26(b)(5) and F.R.C.P. 26(c)(1)(A)" (Docket No. 24) is ALLOWED.

/ s / Judith Gail Dein  
Judith Gail Dein  
United States Magistrate Judge