_____
                                        )
GREGG WADE,                             )
KARIN WADE,                             )
                                        )
          Plaintiffs,                   )
                                        )
          v.                            )
                                        )
TOUCHDOWN REALTY GROUP, LLC,            )
THOMAS CLAYTON,                         )
JULIAN LEWIS,                           )          Civil Action
                                        )          No. 17-10400-PBS
          Defendants/                   )
          Third-Party Plaintiffs,       )
                                        )
          v.                            )
                                        )
COMMONWEALTH REALTY GROUP, LLC          )
d/b/a CENTURY 21 and                    )
LISA PAULETTE,                          )
                                        )
          Third-Party Defendants.       )
_____)


## MEMORANDUM AND ORDER

June 7, 2019

Saris, C.J.

## INTRODUCTION

This dispute arises out of a home sale in Foxborough,
Massachusetts. Plaintiffs Gregg and Karin Wade allege that the
home they purchased from Defendant Touchdown Realty Group, LLC
("Touchdown") did not comply with building codes in breach of
the purchase agreement and that Touchdown and Defendant Thomas

Clayton falsely represented that the home was a three-bedroom house, not a two-bedroom house, and that it was code-compliant. Plaintiffs assert claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraud/fraudulent inducement (Count III), and violations of Chapter 93A (Count V). They also seek a declaratory judgment that Touchdown is an alter ego of Clayton (Count IV).

Defendants filed a third-party complaint impleading Plaintiffs' real estate agent, Lisa Paulette, and her employer Commonwealth Realty Group, LLC ("Commonwealth"), seeking contribution and indemnification for Counts III and V. Defendants and Third-Party Defendants have moved for summary judgment. Defendants also have moved to strike Plaintiffs' opposition to their motion for summary judgment.

After hearing, the Court **ALLOWS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Dkt. No. 100); **ALLOWS** Third-Party Defendants' motion for summary judgment (Dkt. No. 110); and **DENIES** Defendants' motion to strike (Dkt. No. 118).

## FACTUAL BACKGROUND

The following facts are undisputed except where otherwise stated.

# I.     **The Parties**

In August 2018, Plaintiffs, who were moving from Michigan with their two children, one of whom is disabled, purchased from Touchdown the property located at 32 Oak Street, Foxborough, Massachusetts ("32 Oak Street"). Touchdown is a Rhode Island limited liability corporation, with its principal place of business at 12 E. Cottage Street, Smithfield, Rhode Island. Touchdown is in the business of buying and renovating residential real estate for resale. Clayton's wife, Kelly Clayton, is Touchdown's sales manager and sole shareholder. The company address is also the Claytons' home address in Rhode Island.

Clayton, a former professional football player, is a vice president of Better Living Real Estate, LLC ("Better Living"). He is a licensed home improvement contractor and real estate agent who sometimes oversees the renovation, and brokers the sales, of properties owned by Touchdown.

Commonwealth is a foreign limited liability corporation registered to do business in Massachusetts, and doing business under the trade name Century 21 Commonwealth ("Century 21"). Paulette is a real estate agent who works for Century 21. Paulette served as Plaintiffs' real estate agent in connection with their purchase of 32 Oak Street.

## II.  **32 Oak Street**

Touchdown purchased 32 Oak Street on April 6, 2016. At that time, it was listed as a three-bedroom home; it had historically been taxed as a three-bedroom home; and the Title V report referred to it as a three-bedroom home. Touchdown began renovations on 32 Oak Street shortly after the purchase. Julian Lewis was the general contractor responsible for the renovations. Clayton was involved in overseeing the renovations, but the parties dispute the extent of his involvement.

Defendants were granted a permit by the Town of Foxborough for the renovations. The permit did not authorize any electrical or plumbing work. The parties hotly dispute the extent of the renovations performed by Touchdown and whether these renovations were consistent with the applicable building codes. On August 15, 2016, the Town of Foxborough building inspector, Thomas Wrynn, sent a letter to Clayton notifying him that Touchdown was in violation of the town's building codes because it failed to pull plumbing and electrical permits as part of the initial renovation of 32 Oak Street. Defendants subsequently hired a plumber, Mark Mason, and an electrician, Erik Wilkinson, to perform additional work on 32 Oak Street. Mason and Wilkinson pulled permits for the additional work they performed.

In addition to renovating the interior of 32 Oak Street, Touchdown installed a new distribution box and a 1500-gallon tank

for the septic system. Even with this upgrade, 32 Oak Street's septic system only supported a two-bedroom home. Accordingly, the Town of Foxborough required Touchdown to record a deed restriction which limited the use of 32 Oak Street to two bedrooms. That deed restriction was recorded on July 15, 2016. Clayton requested the Town of Foxborough to treat the property as a three-bedroom dwelling, but the Town repeatedly told him that it could only be used as a two-bedroom dwelling. Clayton claims that he always understood that 32 Oak Street could be used as a three-bedroom dwelling, notwithstanding the deed restriction.

### III. **Sale of 32 Oak Street**

Plaintiffs began working with Paulette in their housing search in July 2016. Plaintiffs were looking specifically for a three-bedroom home. Touchdown first listed 32 Oak Street for sale on July 18, 2016. The listing for the property claimed it was a three-bedroom house but also disclosed that it was a "[c]urrent design two bed." Dkt. No. 105 (MLS Listing) at 2. On July 21, 2016, after seeing the listing for 32 Oak Street, Paulette contacted Clayton by email. Paulette asked Clayton whether he could "explain the 2 bedroom septic system for a 3 bedroom house." Dkt. No. 105-2 (July 21, 2016 Email) at 2. Clayton responded that "the house is obviously a 3 bed dwelling" but "the septic design is grandfathered in as 2 bedroom design."

Id. at 3. Paulette subsequently forwarded this email chain to Plaintiffs.

On July 22, 2016, Plaintiffs submitted an offer to purchase 32 Oak Street, which Touchdown accepted. Plaintiffs subsequently received a copy of the appraisal report for 32 Oak Street which indicated that it was a two-bedroom dwelling. Attached to that appraisal report was a copy of the deed restriction. Plaintiffs only skimmed the appraisal report and did not look at its attachments.

On August 2, 2016, Plaintiffs signed a purchase agreement for 32 Oak Street. In relevant part, the purchase agreement warranted that "at the time of Closing [32 Oak Street was] not in violation of [the applicable] building and zoning codes." Dkt. No. 106 (Purchase Agreement) at 5. An addendum to the purchase agreement also warranted that "SELLERS have not received any notice that the property violates any municipal, state or federal law, rule, regulation or ordinance." Id. at 13. And a further addendum warranted that "[t]here is, to the best of the Seller's knowledge and belief, no notice, suit, order, decree, claim, writ, injunction or judgment relating to material violations of any laws[,] ordinances, codes, regulations or other requirements with respect to the premises in, of, or by any court or governmental authority having jurisdiction over the premises." Id. at 16.

The sale of 32 Oak Street to Plaintiffs closed on August 31, 2016. Following the closing, Plaintiffs hired Dennis Schadler to renovate 32 Oak Street's downstairs bedroom and bathroom for their disabled daughter and also to perform some work in the kitchen. Schadler claims that when he opened up the walls in the basement and kitchen, he discovered improper construction, insulation, electrical, plumbing, and fire stopping that violated the applicable building codes. The parties dispute whether these code violations were the product of Touchdown's renovation of 32 Oak Street or whether they predated Touchdown's ownership, and whether Touchdown knew of the violations.

Because of the deed restriction, Plaintiffs were not able to use the downstairs room as a bedroom for their daughter. They want to move.

## JURISDICTION

Before the Court proceeds to the merits of the summary judgment motions, some housekeeping is in order. The amended complaint names four defendants: Touchdown, Clayton, Lewis, and Better Living. Plaintiffs voluntarily dismissed their claim against Better Living on March 9, 2018. Plaintiffs assert a claim for negligent supervision against Lewis (Count VII). Lewis, who was served, has not answered the amended complaint, and the other parties seem to be proceeding as if he is no

7

longer part of the case. Yet Plaintiffs have not dismissed their claim against Lewis, nor have they filed a motion for default. He was deposed.

This is relevant here because, according to the amended complaint and Lewis's deposition testimony, he is a resident of Massachusetts. So are Plaintiffs. Therefore, the parties are nondiverse, and the Court currently lacks subject matter jurisdiction over this case. See 28 U.S.C. § 1332(a); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996). Pursuant to Federal Rule of Civil Procedure 21, "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "Dismissal of a nondiverse dispensable party has long been recognized as a way to cure a jurisdictional defect and Rule 21 explicitly vests district courts with authority to allow a dispensable non-diverse party to be dropped at any time." Cason v. P.R. Elec. Power Auth., 770 F.3d 971, 977 (1st Cir. 2014). Accordingly, the Court finds that Lewis is a dispensable party and dismisses the claim against him in order to cure its lack of jurisdiction.[1]

---

[1] If any of the parties object to the dismissal of the claim against Lewis, they must file an objection within 10 days of this order.

**MOTIONS FOR SUMMARY JUDGMENT**

## I.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the party moving for summary judgment to establish that there are no genuine disputes of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). A dispute of fact is considered genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (quotation omitted). A fact is material if "it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 207 (1st Cir. 2012) (quotation omitted). Critically, the Court must view the entire record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011).

## II.   Defendants' Motion for Summary Judgment

### a. Contract and Breach of the Covenant of Good Faith and Fair Dealing Claims (Counts I and II)

Plaintiffs allege that Defendants breached the purchase agreement because the home was not in compliance with the

9

applicable building codes. [2] Defendants assert that Plaintiffs have not submitted admissible evidence of code violations. The thrust of the defense is that the Plaintiffs have not designated an expert witness who has the qualifications to give an opinion on code compliance.

Plaintiffs intend to rely on the testimony of their general contractor, Dennis Schadler, a carpenter by trade, who discovered the alleged code violations and performed additional work to bring the house up to code. Federal Rule of Evidence 701 provides that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Under First Circuit law, lay witnesses are allowed to offer opinion testimony based on their "experiential expertise" so long as it is "well founded on personal knowledge and susceptible to cross-examination." United States v. Vega, 813 F.3d 386, 394 (1st Cir. 2016) (quoting United States v.

---

[2] In their opposition, Plaintiffs assert for the first time that Defendants also breached a separate "Repair Agreement" in which Touchdown promised to provide Plaintiffs with "all closed work permits issued by the Town of Foxboro, Massachusetts for recent renovations made after April 2016." Dkt. No 115 (Wades' Opposition) at 11-12. The Court does not address this new breach claim because it was not raised in either the initial or amended complaints.

<u>Ayala-Pizarro</u>, 407 F.3d 25, 28 (1st Cir. 2005)). "Such lay expertise is 'the product of reasoning processes familiar to the average person in everyday life.'" <u>Id.</u> (quoting <u>United States v. García</u>, 413 F.3d 201, 215 (2d Cir. 2005)). This includes knowledge gained through work experience. <u>United States v. Maher</u>, 454 F.3d 13, 24 (1st Cir. 2006) ("Rule 701 . . . is meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job."). On the other hand, certain knowledge acquired on the job is too technical to fall within the scope of Rule 701. <u>See</u> <u>Vega</u>, 813 F.3d at 395 (finding that witnesses' "understanding [of] technical Medicare laws and regulations" did not constitute "lay expertise").

Schadler is a percipient witness who remodeled the basement and kitchen of 32 Oak Street. At the very least he can give opinion testimony about his perception based on his knowledge and skill as a contractor and carpenter and a summary of the steps he took to bring 32 Oak Street up to code. For example, he points to defective framing and insulation that he repaired in the areas of the house remodeled by Defendants. While some of his testimony may cross into specialized areas of technical expertise covered by Rule 702, the Court cannot assess whether he is qualified to offer that testimony based on the current record. For example, Defendants complain he is not a licensed

plumber or electrician. Schadler contends he has the requisite experience with plumbing and electrical codes by virtue of being a general contractor. This is an issue the Court will have to tackle in the context of a pretrial Daubert motion.

### b. **Fraud/Fraudulent Inducement Claims (Count III)**

Plaintiffs' fraud claims are based on two different sets of misrepresentations and/or omissions. First, they claim Defendants knew of and failed to disclose the building code violations at 32 Oak Street. Second, they contend Defendants misled Paulette and, indirectly, Plaintiffs about 32 Oak Street's number of bedrooms.

Defendants assert that there is no admissible evidence they knowingly made any misrepresentations about building code compliance. See Int'l Totalizing Sys., Inc. v. PepsiCo, Inc., 560 N.E.2d 749, 753 (Mass. App. Ct. 1990). In response, Plaintiffs point to evidence that Defendants knew of the building code violations. Specifically, Schadler will testify that 32 Oak Street was not up to code, including the sections of the house that Defendants renovated prior to the sale to Plaintiffs. See Dkt. No. 114-15 (Schadler Affidavit) ¶¶ 4-7. Several witnesses will testify that Clayton supervised the renovation work on behalf of Touchdown. See Dkt. No. 114-1 (Zajdel Deposition) at 112:13-113:9; Dkt. No. 114-2 (Wrynn Deposition) at 27:17-24; Dkt. No. 114-4 (Wilkinson Deposition)

at 19:8-24. The Town of Foxborough building inspector will testify Defendants did not originally "pull" the necessary building permits for the renovation of 32 Oak Street and then did not "call-in" the Town for follow-up inspections as required by local ordinance. See Dkt. No. 114-2 (Wrynn Deposition) at 36:5-13. In mid-August 2016, just a few weeks before the sale closed, the Town of Foxborough sent Clayton a notice of building code violations by certified mail. Id. at 33:19-34:21. From this evidence, a jury could reasonably conclude that Defendants knew of the alleged building code violations.

The closer question is whether mere nondisclosure of the building code violations, without more, is sufficient to support a common law fraud claim. "When a 'seller knows of a weakness in the subject of [a] sale and does not notify the buyer of it,' the non-disclosure does not rise to the level of fraud." Smith v. Zipcar, Inc., 125 F. Supp. 3d 340, 345 (D. Mass. 2015) (quoting Greenery Rehab. Grp. v. Antaramian, 628 N.E.2d 1291, 1294 (Mass. App. Ct. 1994)). "Homeowners who sell their houses are not liable for bare nondisclosure in circumstances where no inquiry by a prospective buyer imposes a duty to speak." Solomon v. Birger, 477 N.E.2d 137, 142 (Mass. App. Ct. 1985) (holding that the fact that vendors did not mention that "the house had developed cracks, including one in the basement obscured by a floor covering, [did] not constitute fraudulent concealment").

Instead, "[t]here must be some affirmative act of concealment to support an action for fraud." Id. There is no indication from the record before the Court that Plaintiffs made an inquiry as to 32 Oak Street's code compliance that would create a duty to speak for Defendants. And the affirmative acts Plaintiffs point to are Defendants' "hiding the lack of permits and inspections" and "putting up walls to hide code defects." Dkt. No. 115 at 14. Based on the record before the Court, these are specific instances of non-disclosure rather than affirmative acts of concealment. Accordingly, the Court grants summary judgment to Defendants on Plaintiffs' common law fraud claims to the extent they are based on non-disclosure of building code violations.

With respect to the bedroom-count issue, Defendants contend that in Clayton's email he informed Paulette that 32 Oak Street was restricted to two-bedroom use, while Paulette claims he told her nothing of the sort. The whole dispute centers around the meaning of the July 21, 2016 email from Clayton to Paulette on the same subject. The parties contest what Clayton meant when he stated that 32 Oak Street was "obviously a 3 bed dwelling" and "grandfathered in as a 2 bedroom design." The parties also dispute whether the Town of Foxborough told Clayton in May 2016 that 32 Oak Street could not be used as a three-bedroom dwelling and that there would be no "grandfathering in." When all reasonable inferences are drawn in favor of plaintiffs, Clayton

informed the buyers that the house could be used as a three bedroom because it was "grandfathered in" when the Town told him that was not the case.

Defendants also argue that Plaintiffs cannot establish that their reliance on Clayton's representations regarding the bedroom count was reasonable. "Reliance is typically a question of fact for the jury." Clinical Tech., Inc. v. Covidien Sales, LLC, 192 F. Supp. 3d 223, 240 (D. Mass. 2016). "However, in some circumstances a plaintiff's reliance on oral statements in light of contrary written statements is unreasonable as a matter of law." Marram v. Kobrick Offshore Fund, Ltd., 809 N.E.2d 1017, 1031 (Mass. 2004). When an oral statement is in direct conflict with another express written statement, "the conflict puts [a party] 'on notice that [they] should not rely on either statement.'" Clinical Tech., 192 F. Supp. at 240 (quoting Trifiro v. N.Y. Life Ins. Co., 845 F.2d 30, 33 (1st Cir. 1988)).

Plaintiffs received an appraisal report prior to the sale which noted in several places that 32 Oak Street was a two-bedroom dwelling. See, e.g., Dkt. No. 106-1 at 2-3. The appraisal report also attached a copy of the deed restriction which stated "at no time shall there exist more than (2) TWO Bedrooms in, on, upon, through, over and under said Property." See id. at 26-27. Plaintiffs only skimmed the appraisal report and did not read the attached deed restriction. See Dkt No. 104-

4 (K. Wade Deposition) at 94:21-95:13; Dkt. No. 105-3 (G. Wade
Deposition) at 39:5-40:12. If Defendants had simply represented
to Plaintiffs that 32 Oak Street was a three-bedroom dwelling,
then the subsequent disclosures in the appraisal report and the
deed restriction would render Plaintiffs' reliance on that
statement unreasonable as a matter of law. However, Clayton
acknowledged that 32 Oak Street was "a 2 bedroom design" but
assured them that it was "grandfathered in" and they could
continue to use it as a three-bedroom dwelling. Accordingly, the
Clayton's reliance on the representation that the house was
grandfathered in was not unreasonable as a matter of law.

### c. **Chapter 93A Claims (Count V)**

Under 940 Mass. Code Regs. 3.16, it is a violation of
Chapter 93A if "[a]ny person or other legal entity . . . fails
to disclose to a buyer or prospective buyer any fact, the
disclosure of which may have influenced the buyer or prospective
buyer not to enter into the transaction." 940 Mass. Code Regs.
3.16(2). This makes clear that non-disclosure of the building
code violations can support Plaintiffs' Chapter 93A claim.
Defendants argue that Plaintiffs' Chapter 93A claim did not
comply with Chapter 93A's 30-day demand letter requirement. See
Mass. Gen. Laws ch. 93A, § 9(3). Plaintiffs have put evidence
into the record showing that they sent pre-suit demands by
either certified or first-class mail to the two most recent

16

addresses for both Touchdown and Clayton. Defendants evidently refused to accept service of the demand letters, but they were properly mailed and delivered. See Smith v. Jenkins, 732 F.3d 51, 74 (1st Cir. 2013) ("All that the statute requires is that a demand letter be 'mailed or delivered' to a prospective respondent.")

### d. **Alter Ego Claim (Count IV)**

Plaintiffs seeks to pierce the corporate veil of Touchdown and hold Clayton liable for its misdeeds as an alter ego. Under Massachusetts law, courts consider multiple factors in determining whether to pierce the corporate veil:

> (1) common ownership; (2) pervasive control;
> (3) confused intermingling of business assets;
> (4) thin capitalization; (5) nonobservance of
> corporate formalities; (6) absence of corporate
> records; (7) no payment of dividends; (8) insolvency
> at the time of the litigated transaction; (9)
> siphoning away of corporation's funds by dominant
> shareholder; (10) nonfunctioning of officers and
> directors; (11) use of the corporation for
> transactions of the dominant shareholders; and
> (12) use of the corporation in promoting fraud.

Attorney Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000). "These factors are not simply added up, but rather are considered in an integrated manner based on all of the facts presented." Lothrop v. N. Am. Air Charter, Inc., 95 F. Supp. 3d 90, 101 (D. Mass. 2015); see also Middlesex Ret. Sys., LLC v. Bd. of Assessors, 903 N.E.2d 210, 217 (Mass. 2009) (applying alter ego doctrine to limited liability company).

Defendants have identified three facts which militate against disregarding Touchdown's corporate form. First, Touchdown is owned and operated exclusively by Kelly Clayton. Second, Touchdown owns no interest in any other corporate entity. Third, Clayton owns no interest in Touchdown. Meanwhile, Plaintiffs emphasize that Defendants have not produced any documentation related to the renovation or re-sale of 32 Oak Street. Specifically, Touchdown has not produced an accounting for the renovation of 32 Oak Street or evidence of compensation to Clayton for his work on the project. Dkt. No. 116 (Plaintiffs' SoF) ¶¶ 25-35. In fact, Kelly Clayton stated her husband was given "just my love" for his part in remodeling and brokering the sale of 32 Oak Street. Dkt. No. 116 (Plaintiffs' SoF) ¶ 31. Moreover, the Claytons' home address is the same as Touchdown's corporate address. While piercing the corporate veil is meant to be a rare occurrence, see M.C.K., Inc., 736 N.E.2d at 382, the Court cannot conclude on this record that piercing is unavailable as a matter of law.

* * *

Accordingly, the Court allows Defendants' motion for summary judgment with respect to the common law fraud claims based on non-disclosure of building code violations. In all other respects, Defendants' motion is denied.

## III. **<u>Third-Party Defendants' Motion for Summary Judgment</u>**

Third-Party Defendants advance two arguments for why they are entitled to summary judgment on Defendants' contribution claims. First, Third-Party Defendants have reached a good faith settlement with Plaintiffs in connection with the alleged misconduct, which extinguishes Defendants' right to contribution under Mass. Gen. Laws. ch. 231B. Second, the undisputed material facts do not establish negligence on the part of Third-Party Defendants. The Court only needs to address Third-Party Defendants' first argument.

Under Chapter 231B, "[w]hen a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . [i]t shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." In order secure dismissal under Chapter 231B, the moving parties "ha[ve] the initial burden of establishing that a settlement has been agreed upon and its nature and terms." <u>Noyes v. Raymond</u>, 548 N.E.2d 196, 200 (Mass. App. Ct. 1990). The burden then shifts to the non-moving parties to make "some showing of lack of good faith." <u>Id.</u> If the non-moving parties make such a showing, then they are entitled to an evidentiary hearing to address whether the settlement in fact was made in good faith. <u>Id.</u>; <u>see also</u>

<u>United States v. Dynamics Research Corp.</u>, 441 F. Supp. 2d 259, 268-69 (D. Mass. 2006) (applying same framework).

There is no dispute that Third-Party Defendants and Plaintiffs entered into a settlement releasing Third-Party Defendants from all claims arising from the sale of 32 Oak Street. Third-Party Defendants have submitted a copy of the agreement along with their motion, and nothing about its terms provide any reason to believe it is the product of collusion, fraud, dishonesty, or other wrongful conduct. <u>See</u> Dkt. No. 110-17. It is Defendants' burden, then, to put forward some evidence that the settlement was entered into in bad faith. Yet Defendants concede that they do not "have any legitimate evidence, at this point, sufficient to trigger an evidentiary hearing on the issue of good faith." Dkt. No. 122 at 11. As a Hail Mary, Defendants point to the comparatively small settlement amount. But "[t]he amount of a settlement has no bearing on the good faith question." <u>Chapman v. Bernard's Inc.</u>, 198 F.R.D. 575, 578 (D. Mass. 2001); <u>see also</u> <u>Noyes</u>, 548 N.E.2d at 199 ("The fact that the amount of a settlement is low in comparison to the plaintiff's estimate of her own damages, by itself, is, however, not material.").

Meanwhile, Third-Party Defendants' argue that common law indemnification is inapplicable in this case. "[T]he right to indemnity is limited to those cases where the person seeking

indemnification is blameless, but <u>is held derivatively or vicariously liable for the wrongful act of another</u>." <u>Ferreira v. Chrysler Grp. LLC</u>, 13 N.E.3d 561, 567 (Mass. 2014) (emphasis added). The undisputed facts establish that there was no relationship between Defendants and Third-Party Defendants that could give rise to vicarious or derivative liability. Indeed, they were on opposite sides of the transaction involving 32 Oak Street, and Defendants have not identified any agreement, contract, or legal principle by which they might be held liable for the conduct of Third-Party Defendants. Absent any factual or legal basis for vicarious or derivative liability, Defendants' indemnity claims fail as a matter of law.

Accordingly, the Court allows Third-Party Defendants' motion for summary judgment.

**ORDER**

For the foregoing reasons, the Court **ALLOWS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Dkt. No. 100); **ALLOWS** Third-Party Defendants' motion for summary judgment (Dkt. No. 110); and **DENIES** Defendants' motion to strike (Dkt. No. 118).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
Chief United States District Judge